RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 14a0058p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

ALAN DEMYANOVICH,

*Plaintiff-Appellant,*

v.

CADON PLATING & COATINGS, L.L.C. et al.,

*Defendants-Appellees.*

No. 13-1015

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit
No. 2:10-cv-15119—Avern Cohn, District Judge.

Argued: November 21, 2013

Decided and Filed: March 28, 2014

Before: MOORE and GRIFFIN, Circuit Judges; KORMAN, District Judge.[*]

---

**COUNSEL**

**ARGUED:** Paul J. Dillon, DILLON & DILLON P.L.C., Plymouth, Michigan, for Appellant. Patrice Arend, JAFFE RAITT HEUER & WEISS, P.C., Southfield, Michigan, for Appellees. **ON BRIEF:** Paul J. Dillon, DILLON & DILLON P.L.C., Plymouth, Michigan, for Appellant. Patrice Arend, JAFFE RAITT HEUER & WEISS, P.C., Southfield, Michigan, for Appellees.

---

[*]The Honorable Edward R. Korman, United States District Judge for the Eastern District of New York, sitting by designation.

---

**OPINION**

---

KAREN NELSON MOORE, Circuit Judge.  Alan Demyanovich, an employee of Cadon Plating & Coatings, LLC ("Cadon") for more than twenty years, was terminated after he requested leave under the Family and Medical Leave Act ("FMLA") to treat his congestive heart failure.  He argues that Cadon and his direct supervisor, Al Ensign, interfered with his exercise of his FMLA rights, retaliated against him for seeking FMLA leave, and discriminated against him on the basis of disability.  We find evidence in the record to establish a genuine factual dispute as to whether Demyanovich was permanently incapable of working at the time that he was terminated.  Therefore, we **REVERSE** the district court's grant of summary judgment and **REMAND** for proceedings consistent with this opinion.

## I. BACKGROUND

### A. Facts

Cadon coats, seals, and paints various parts for the automotive industry using a number of production lines to treat parts with different coatings or chemicals.  In 1989, Al Ensign, Cadon's Vice President, hired Demyanovich as a "helper" on the production lines.  R. 38-4 (Demyanovich Dep. at 26) (Page ID #638).  He was soon promoted to "operator" and trained to run several of the lines.  *Id.* at 27–28 (Page ID #639–40).  Machine operators load parts onto the lines and ensure that the parts are evenly distributed by "raking" them to a uniform thickness.  *Id.* at 30–31 (Page ID #642–43).  Once the parts have been treated, operators catch them in baskets at the end of the line and operate "hi-lo" trucks to move them away.  R. 38-6 (Ensign Dep. at 15–26) (Page ID #894–905).  Eventually, Demyanovich earned a promotion to "area leader," in which he continued to operate the lines but also trained other operators.  R. 38-4 (Demyanovich Dep. at 38) (Page ID #650).

In late 1998, Demyanovich began to experience health problems.  His primary physician, Dr. Mussani, initially diagnosed bronchitis, R. 38-2 (Employee Med. Records) (Page ID #570), but a specialist later determined that he suffered from dilated cardiomyopathy ("CMP") and

congestive heart failure ("CHF").  *Id.* (Page ID #571).  Demyanovich took FMLA leave between February 2, 1999 and April 23, 1999, after which a doctor cleared him to return to work with restrictions:  Demyanovich was instructed not to lift more than fifty pounds or work more than forty hours per week.  *Id.* (Page ID #573).

Demyanovich continued to work as an operator and area leader for the next ten years.  However, during this time he took FMLA and short-term disability leave several times to cope with various health issues.[1]  In November 2009, Demyanovich requested FMLA leave when his heart conditions worsened.  He was granted paid medical leave between November 23 and December 14.  R. 38-3 (Employee Med. Records) (Page ID #595–98).  In the documentation supporting Demyanovich's FMLA request, his physician indicated that upon his return he "should be able to do what he was doing [before his leave]."  *Id.* (Page ID #596).  The physician also reiterated that Demyanovich was restricted from working overtime and that his restriction would continue "indefinitely."  *Id.* (Page ID #597).  Demyanovich gave this documentation to Ensign upon his return to work on December 14, 2009.

Due to his health problems, Demyanovich began experiencing difficulty performing some aspects of his job.  He requested lighter duty assignments, including switching to a "sorting" position, which he could perform sitting, or to a position at the end of the paint line, where he would not need to move as quickly.  According to Demyanovich, Cadon denied these requests and continued to schedule Demyanovich to work overtime.  R. 38-5 (Demyanovich Dep. at 138–39) (Page ID #764–65).

On February 23, 2010, Demyanovich worked a complete eight-hour shift.  After work, he went to his regularly scheduled doctor's appointment.  At this appointment, Dr. Mussani "[a]dvised [Demyanovich] to quit work [and] apply for S.S. [social security] disability."  R. 34-11 (Medical Records) (Page ID #459).  Demyanovich returned to the Cadon facilities and asked Ensign about taking FMLA leave.  Ensign denied the FMLA request because he believed that Cadon did not have enough employees to be subject to the Act.  R. 38-4 (Demyanovich Dep. at

---

[1]Demyanovich took leave between April 3, 2006 and June 3, 2006 for a hernia operation, between February 16, 2008 and March 2, 2008 for a CHF flare-up, and between July 28, 2008 and September 13, 2008 for unspecified health issues.  R. 38-4 (Demyanovich Dep. at 84–90) (Page ID #696–702); R. 38-2 (Employee Med. Records) (Page ID #583, 586); R. 38-3 (Employee Med. Records) (Page ID #591).

66) (Page ID #678).  Demyanovich claims that Ensign also told him that he was a "liability."  R. 38-5 (Demyanovich Dep. at 155) (Page ID #781).  At this point, Demyanovich no longer had enough points under Cadon's attendance policy to take additional absences.[2]  Ensign terminated Demyanovich's employment shortly thereafter.[3]  R. 38-6 (Ensign Dep. at 85) (Page ID #962).

Demyanovich applied for Social Security benefits on February 23, 2010, and was referred for a mental-health assessment "to determine [his] current strengths in intellectual and cognitive skills."  R. 34-13 (UnifiedMed Report) (Page ID #477–82).  The psychologist who examined Demyanovich noted that he "reports if he were offered a job what would prevent him from working [would be his] health."  *Id.* at 2 (Page ID #478).  Ultimately, the psychologist concluded that Demyanovich suffered mild to moderate impairment in several mental abilities and that he was significantly impaired in his "mental ability to withstand stress and pressure associated with day to day work activities."  *Id.* at 6 (Page ID #482).  Demyanovich also told the psychologist, and conceded at his deposition, that he had a number of physical limitations:  he struggled to walk as far as he used to, to complete various household tasks such as shoveling snow or cutting the grass, to have a sexual relationship with his wife, or even to stand for longer than twenty or thirty minutes without resting.  *Id.* at 3 (Page ID #479); R. 38-4 (Demyanovich Dep. at 116–18) (Page ID #728–30).  Despite his limitations, after he was terminated Demyanovich looked for alternative employment at several restaurants and a car wash because he thought that he "was okay to do some kind of job" under less stressful conditions.  R. 38-5 (Demyanovich Dep. at 198–99) (Page ID #824–25).  After Demyanovich began receiving Social Security benefits, he

---

[2]Cadon's "no fault" attendance policy utilizes a point system:  Employees start with sixteen points, and Cadon subtracts points for various attendance issues.  Employees lose two points for each full-day absence.  However, the written attendance policy directs that penalties are not assessed for leaves of absence, and no points were in fact deducted from Demyanovich for his qualified FMLA leaves.  *See* R. 34-6 (Cadon Plating Attendance Policy) (Page ID #393); R. 34-7 (Absentee Calendars) (Page ID #416, 430, 434–38).  Employees are subject to termination if their attendance point balance falls to zero.  Demyanovich received multiple warnings regarding his absences, and his total dipped below zero several times.  Ensign, at his discretion, gave Demyanovich additional points on these occasions.  However, on December 14, 2009, Ensign told Demyanovich that he would not have any more chances if his point balance dropped to zero again.  R. 38-4 (Demyanovich Dep. at 63–64) (Page ID #675–76).

[3]The parties dispute the precise date of Demyanovich's termination.  The termination letter given to Demyanovich was dated February 26, but states that the termination was effective on February 24.  R. 34-9 (Termination Ltr.) (Page ID #442).  However, Demyanovich seems unsure whether Ensign told him that he was terminated on February 23 or that Ensign would consider and make a decision when he returned from vacation.  R. 38-4 (Demyanovich Dep. at 64–67) (Page ID #676–79).  Regardless, in his deposition testimony, Ensign clearly stated that he told Demyanovich on February 23 that he was terminated.  R. 38-6 (Ensign Dep. at 85) (Page ID #962).

ceased looking for work because Social Security had determined he was disabled. *Id.* at 197 (Page ID #823).

## B. Procedural History

On December 23, 2010, Demyanovich filed a complaint alleging that Cadon and Ensign interfered with his FMLA rights and discriminated against him on the basis of his disability, among other claims. R. 1 (Compl.) (Page ID #1–13). Cadon and Ensign filed a motion to dismiss the complaint for failure to state a claim. R. 7 (Def. Mot. to Dismiss) (Page ID #24–43). The district court granted in part the Defendants' motion to dismiss, but allowed Demyanovich to file an amended complaint alleging five counts: FMLA interference in violation of 29 U.S.C. § 2615(a)(1), FMLA retaliation in violation of 29 U.S.C. § 2615(a)(2), disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(a), ADA retaliation in violation of 42 U.S.C. § 12203, and disability discrimination in violation of the Persons With Disabilities Civil Rights Act ("PWDCRA"), Mich. Comp. Laws § 37.1101 *et seq.* R. 25 (First Am. Compl.) (Page ID #251–63).

After discovery, the Defendants filed a motion for summary judgment on all counts. R. 33 (Mot. for Summ. J.) (Page ID #304–26). On December 4, 2012, the District Court entered an order granting the motion. The district court first determined that Demyanovich could not create a genuine issue of material fact regarding his FMLA interference claim. The district court reasoned that Demyanovich was not an "eligible employee" under the Act because he could not show that he would have been able to work at the end of the twelve-week FMLA leave period. R. 46 (D. Ct. Mem. and Order at 8–9) (Page ID #1331–32). The district court also rejected Demyanovich's argument that the Defendants should have accommodated him by modifying his work schedule or permitting him to take leave. Instead, the court concluded that Demyanovich was unable to work in any capacity. *Id.* at 14 (Page ID #1337). In a lengthy footnote, the district court also concluded that there remains a question of material fact whether Cadon was an "eligible employer" under the Act. *Id.* at 12–13 n.6 (Page ID #1335–36). The court noted the lingering factual disputes regarding whether Cadon and MNP Corporation ("MNP"), a company with many owners, managers, and business operations common to Cadon, are an "integrated employer" for FMLA purposes. *Id.* Nevertheless, because it concluded that Demyanovich could

not show that he was eligible for FMLA benefits, the district court granted summary judgment to the Defendants.

The district court also concluded that Demyanovich had failed to create a genuine issue of material fact as to his FMLA retaliation claim. Although Demyanovich established a prima facie case of retaliation, the district court concluded that he could not show that the Defendants' legitimate, nondiscriminatory reasons for terminating him were pretextual. *Id.* at 16–20 (Page ID #1339–43). The court recognized two legitimate reasons for the termination: violation of Cadon's attendance policy and Demyanovich's permanent inability to return to work. *Id.* at 17 (Page ID #1340). The district court found no evidence that demonstrated intentional discrimination. *Id.* at 20 (Page ID #1343).

Finally, the district court concluded that Demyanovich was unable to prove his ADA discrimination or retaliation claims because he was not a "qualified individual." *Id.* at 21 (Page ID #1344). Although Demyanovich suggested several accommodations, including a modified work schedule, additional leave time, or transfer to alternative line positions, the district court concluded that he presented no evidence, other than his own testimony, that he would have been able to perform those positions. *Id.* at 23 (Page ID #1346). The court reiterated its conclusion that the evidence unquestionably showed that Demyanovich was incapable of performing any job. *Id.* at 24 (Page ID #1347). This appeal followed.

## II. STANDARD OF REVIEW

We review de novo the district court's grant of summary judgment. *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 506 (6th Cir. 2006). Summary judgment is proper when the moving party shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On a motion for summary judgment, the court must view all evidence and draw any reasonable inferences therefrom in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Grace v. USCAR*, 521 F.3d 655, 661 (6th Cir. 2008). The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 251–52 (1986).  A genuine dispute exists when there is sufficient evidence on which the jury could reasonably find for the nonmoving party.  *Id.* at 252.

### III.  FMLA CLAIMS

The FMLA entitles eligible employees to take up to twelve weeks of leave during any twelve month period "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee."  29 U.S.C. § 2612(a)(1)(D).  Employees who return to work within the twelve-week statutory period are entitled to return to their previous position or an equivalent position.  *Id.* at § 2614(a)(1).  An employer violates the FMLA when it "interfere[s] with, restrain[s], or den[ies] the exercise of or the attempt to exercise" FMLA rights.  *Id.* at § 2615(a)(1); *see also Bryson v. Regis Corp.*, 498 F.3d 561, 569–70 (6th Cir. 2007).  An employer is also prohibited under the FMLA from "discharg[ing] or in any other manner discriminat[ing] against any individual for opposing any practice made unlawful" under the FMLA.  29 U.S.C. § 2615(a)(2).

### A.  FMLA Interference

An employee may prove FMLA interference using the familiar burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973):  the employee has the initial burden of establishing his prima facie case; if he does so, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions; finally, the employee has the burden of rebutting the employer's proffered reasons by showing them to be pretextual.  *See Donald v. Sybra, Inc.*, 667 F.3d 757, 761–62 (6th Cir. 2012).  To establish a prima facie case of FMLA interference, an employee must show that:  (1) he was an eligible employee; (2) the defendant was a covered employer under the FMLA; (3) he was entitled to take leave under the FMLA; (4) he notified his employer of his intent to take leave; and (5) the employer denied him benefits or rights to which he was entitled under the FMLA.  *Edgar*, 443 F.3d at 507.  There is no dispute that Demyanovich was an eligible employee with a serious health condition that required ongoing treatment.  *See* 29 U.S.C. § 2611(11).  Nor is there any dispute that Demyanovich was entitled to take FMLA leave, *id.* at § 2612(a)(1)(D), and that he notified Ensign of his intention to take leave on February 23.  Rather, Cadon argues that it is not

a covered employer under the FMLA and that Demyanovich was not denied any benefits to which he was entitled.

Demyanovich has presented sufficient evidence to raise a genuine factual dispute regarding whether Cadon is a "covered employer" under the FMLA. The FMLA applies only to employers with fifty or more employees "during each of 20 or more calendar workweeks in the current or preceding calendar year." 29 U.S.C. § 2611(4)(A)(i). Documentation provided by Cadon shows that it employed, at most, forty-seven employees at any given time during the 2009 calendar year and the portion of 2010 before Demyanovich was terminated. R. 45-7 (Def. Interrog. Resp. at 9–11) (Page ID #1300–02). Even with the addition of temporary employees, the total number of employees never rose to fifty. R. 45-6 (Temp. Employee Chart) (Page ID #1296). Although Demyanovich asserts that he knows of employees who were not accounted for on the list provided by Cadon, he failed to offer any evidence of additional employees to dispute Cadon's employment figures. *See Chappell v. City of Cleveland*, 585 F.3d 901, 912 (6th Cir. 2009). Thus, Demyanovich failed to refute Cadon's evidence that it employed fewer than fifty individuals during the relevant time period.

Nonetheless Demyanovich has created a genuine dispute as to whether Cadon is a covered employer because he has presented evidence that Cadon is an "integrated employer" with MNP, an affiliated company with more than 500 employees. The federal regulations accompanying the FMLA provide:

> Separate entities will be deemed to be parts of a single employer for purposes of FMLA if they meet the integrated employer test. . . . A determination of whether or not separate entities are an integrated employer is not determined by the application of any single criterion, but rather the entire relationship is to be reviewed in its totality. Factors considered in determining whether two or more entities are an integrated employer include:
> 
> (i) Common management;
> (ii) Interrelation between operations;
> (iii) Centralized control of labor relations; and
> (iv) Degree of common ownership/financial control.

29 C.F.R. § 825.104(c)(2). No single factor among the four is determinative, and all four need not be present in every case to conclude that two entities are integrated. *Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 994 (6th Cir. 1997).

Demyanovich has presented evidence from which a reasonable jury could conclude that Cadon and MNP are integrated employers. First, MNP and Cadon share several common managers. Craig Stormer is the Executive Vice President of both Cadon, R. 39-4 (Cadon Annual Statement) (Page ID #1055), and MNP, R. 45-10 (MNP Website) (Page ID #1320). In addition, Randy Allison, who is Vice President of Human Resources for MNP, also functioned as a human resources manager at Cadon: Ensign made the decision to terminate Demyanovich "with some help" from Allison, R. 38-6 (Ensign Dep. at 80) (Page ID #958); Cadon's office manager regularly consulted Allison or his subordinates at MNP regarding employee matters, R. 39-5 (Bluhm Dep. at 12–13) (Page ID #1072–73); and Allison represented Cadon management when negotiating the collective bargaining agreement with unionized Cadon employees, R. 38-6 (Ensign Dep. at 9) (Page ID #889). Second, the operations of the two entities are interrelated. Although there is no evidence that Cadon and MNP mingle accounts or keep joint financial records, *see Armbruster v. Quinn*, 711 F.2d 1332, 1338 (6th Cir. 1983), they maintain the same registered business address and jointly obtain quality certifications. R. 39-6 (Quality Certifications) (Page ID #1092–1102). Moreover, the two entities are engaged in the same business of preparing automotive parts, *see Grace*, 521 F.3d at 665, and orders from MNP comprise half of Cadon's business. R. 38-6 (Ensign Dep. at 81) (Page ID #958); R. 39-3 (MNP Website) (Page ID #1053). Third, MNP exercised at least some control over Cadon's labor relations. Cadon employees regularly consulted Allison, MNP's human resources officer, on labor and employment issues. Allison also represented Cadon in negotiating the collective bargaining agreement, suggesting that MNP retained some degree of centralized control over Cadon's employment practices. *But see Swallows*, 128 F.3d at 995 (finding no evidence of control over labor relations because one company had no authority to hire or fire employees at the other). Finally, the same group of investors has owned both MNP and Cadon since 2004. R. 38-6 (Ensign Dep. at 4–5) (Page ID #884). Thus, Demyanovich has presented sufficient evidence to create a genuine dispute regarding whether Cadon and MNP are an "integrated employer" covered under the FMLA.

Demyanovich also disputes Cadon's assertion that he was not entitled to FMLA benefits because he would have been unable to return to work at the end of the statutory leave period. If an employer takes an adverse employment action at least in part because an employee requested or took FMLA leave, the employer has denied an FMLA benefit. *Donald*, 667 F.3d at 761. However, the employee must show that he was entitled to the benefit and was harmed by the denial. *See Edgar*, 443 F.3d at 508. Employees who, at the end of the twelve-week leave period, remain "unable to perform an essential function of the position because of a physical or mental condition . . . [have] no right to restoration to another position under the FMLA." 29 C.F.R. § 825.216(c). Indeed, "[t]he right to reinstatement guaranteed by 29 U.S.C. § 2614(a)(1) is the linchpin of the [interference claim] because the FMLA does not provide leave for leave's sake, but instead provides leave with an expectation that an employee will return to work after the leave ends." *Edgar*, 443 F.3d at 507 (internal quotation marks omitted). Thus, when an employee is indisputably unable to work at the end of the statutory leave period, he has not been denied any benefit to which he was entitled even if his employer denied his request for leave. *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 784–85 (6th Cir. 1998).

Although there is ample evidence that Demyanovich might have had difficulty returning to work within twelve weeks of his February 23 request for FMLA leave, it is not indisputable that he would have been unable to do so. Dr. Mussani, Demyanovich's primary physician, "advised [Demyanovich] to quit work" and seek Social Security benefits, but he did not draft any documentation stating that Demyanovich was categorically unable to continue working. R. 34-11 (Medical Records) (Page ID #459). We may not draw the inference, adverse to Demyanovich, that because Dr. Mussani had always cleared Demyanovich to return to work after past examinations, his advice to quit on this occasion demonstrates that Demyanovich was no longer capable of working. *Edgar*, 443 F.3d at 506 ("In considering a motion for summary judgment, the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party.")

The materials related to Demyanovich's application for Social Security disability benefits are also not determinative. Neither application for nor receipt of social security disability benefits is by itself conclusive evidence that an individual is completely incapable of working.

*See Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 797–98 (1999) (concluding that claims for Social Security disability benefits are not inherently inconsistent with ADA claims because a disabled worker might be able to perform essential job functions with reasonable accommodations); *see also Verhoff v. Time Warner Cable, Inc.*, 299 F. App'x 488, 497–98 (6th Cir. 2008) (extending *Cleveland*'s logic to an FMLA interference claim). Furthermore, although the psychologist who evaluated Demyanovich in connection with his Social Security claim concluded that he was limited in several work-related abilities, R. 34-13 (UnifiedMed Report at 6) (Page ID #482), he did not conclude that Demyanovich was incapable of working in any capacity. *Cf. Cehrs*, 155 F.3d at 778, 784–85 (finding no FMLA violation when the employee's doctor provided her employer with documentation stating that she would be unable to return to work until after the statutory leave period); *Williams v. Toyota Motor Mfg., Ky., Inc.*, 224 F.3d 840, 845 (6th Cir. 2000), *rev'd on other grounds by* 534 U.S. 184 (2002) (finding no violation because the employee "unequivocally stated that she was restricted at the time of her termination and up until at least nine months later from doing any work of any kind, not even office jobs").

Nor do the vague descriptions of statements made by Demyanovich contained in the psychologist's report amount to indisputable admissions that Demyanovich was incapable of working. Employees are generally estopped from making factual assertions in a civil suit that directly contradict factual positions taken before the Social Security Administration. *Cleveland*, 526 U.S. at 802; *see also Blanton v. Inco Alloys Int'l, Inc.*, 108 F.3d 104, 108 (6th Cir. 1997). However, the statements recorded in the psychologist's report are not definitive admissions that Demyanovich was permanently unable to work. The psychologist reported that Demyanovich said that "if he were offered a job what would prevent him from working [is his] health" and that "he is not working now due to . . . health reasons." R. 34-13 (UnifiedMed Report at 2–3) (Page ID #478–79). Drawing reasonable inferences in Demyanovich's favor, these statements could be read as indicating that Demyanovich simply concluded that he was fired because of his health.

Finally, many of Demyanovich's own statements indicate that he was capable of working as a machine operator. Demyanovich admits that he was having difficulty with many basic physical activities, such as standing, lifting, and walking. R. 38-4 (Demyanovich Dep. at 116–20) (Page ID #728–32); R. 34-13 (UnifiedMed Report at 3) (Page ID #479). These

limitations may have prevented him from filling the fast-paced line positions that required raking. However, some machine operators at Cadon performed duties that were less physically demanding and stressful than the paint line operator positions that Demyanovich had been regularly filling. Demyanovich maintains that he was capable of performing the "sorting" or "catching" paint line positions, both of which were positions to which machine operators could be assigned.**4** R. 38-5 (Demyanovich Dep. at 198–99, 224) (Page ID #824–25, 850). Although Demyanovich's difficulty with standing for long periods of time may have disqualified him from even these positions, a jury could also reasonably conclude that Demyanovich was capable of working at slower-paced positions by the end of the statutory leave period. Thus, Demyanovich has created a genuine dispute as to whether he was entitled to FMLA benefits, which Cadon denied by terminating him.

Because Demyanovich has presented sufficient evidence to prove a prima facie case, the burden shifts to Cadon to articulate a legitimate reason for terminating Demyanovich's employment after he requested FMLA leave. "[I]nterference with an employee's FMLA rights does not constitute a violation if the employer has a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct." *Edgar*, 443 F.3d at 508. Cadon has asserted two reasons for terminating Demyanovich that are purportedly unrelated to his FMLA request: First, Cadon claims that any further absences would subject Demyanovich to termination under Cadon's "no fault" attendance policy and, second, Cadon contends that Demyanovich would have been unable to return to work at the end of his leave period in any event. Therefore, the burden shifts back to Demyanovich to demonstrate that Cadon's purported reasons for terminating his employment are pretextual. Plaintiffs may show that an employer's proffered reasons for an adverse employment action are pretext for discrimination if the reasons

---

**4**An employee returning from FMLA leave must be able to perform the job he held at the time he took leave: "If the employee is unable to perform an essential function of the position because of a physical or mental condition . . . the employee has no right to restoration to another position under the FMLA." 29 C.F.R. § 825.216(c). Cadon designates most of its employees as "machine operators" and rotates them through a variety of different positions on or near the various production lines. Not all machine operators have the training or ability to perform all of the functions of all of the positions, and some positions are easier than others. R. 38-6 (Ensign Dep. at 26–27) (Page ID #905–06). For example, Demyanovich himself was unable to perform some of the functions on the WMV paint line, but was nonetheless considered fully qualified as a machine operator. R. 38-5 (Demyanovich Dep. at 168–69) (Page ID #794–95). Thus, even if Demyanovich was no longer able to perform some of the functions of the line positions he once regularly filled, he is not necessarily unable to work as a machine operator.

"(1) have no basis in fact; (2) did not actually motivate the action; or (3) were insufficient to warrant the action." *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285 (6th Cir. 2012).

First, Demyanovich did not actually drop to a zero-point attendance balance, and thus Cadon's assertion that he was subject to termination under the attendance policy has no basis in fact. Ensign understood that Demyanovich had one-and-a-half attendance points remaining as of February 23, 2010. R. 38-6 (Ensign Dep. at 72) (Page ID #949). Although Demyanovich's termination letter states that his termination was effective February 24, after an additional absence that would have left him with a negative point balance, R. 34-9 (Termination Ltr.) (Page ID #442), Demyanovich has presented evidence from which a jury could conclude that he was actually fired on February 23. Demyanovich believed that after he "asked [Ensign] for medical leave" on the evening of February 23, Ensign told him to stay home. R. 38-5 (Demyanovich Dep. at 226–27) (Page ID #852–53). Furthermore, Ensign admitted in his deposition testimony that he told Demyanovich that he was terminated on February 23. R. 38-6 (Ensign Dep. at 85) (Page ID #962). A reasonable jury could conclude that at the time Demyanovich was terminated on February 23, he still had attendance points and was not subject to termination under Cadon's attendance policy.

Second, Demyanovich's purported inability to return to work at the end of the statutory leave period could not have actually motivated Ensign's decision to terminate his employment on the evening of February 23. As an initial matter, Demyanovich disputes the factual conclusion that he would have been unable to work as a machine operator at the end of the twelve-week FMLA leave period. More troubling is that Ensign did not even have access to information regarding Demyanovich's physical limitations at the time he fired Demyanovich: There is no evidence that Ensign had seen Dr. Mussani's note recommending that Demyanovich quit, and a psychologist had not yet even examined Demyanovich to determine his eligibility for Social Security benefits. Because Ensign had no basis on which to believe that Demyanovich would be unable to return to work at the time he was terminated, that could not have been the actual reason for Demyanovich's termination. Therefore, Demyanovich has presented evidence genuinely to dispute whether each of Cadon's purported reasons for terminating his employment is pretextual. Because we find sufficient evidence to support the conclusion that Cadon

interfered with Demyanovich's right to FMLA leave without a legitimate reason for doing so, we reverse the district court's grant of summary judgment in favor of Cadon as to the FMLA interference claim.

## B. FMLA Retaliation

A plaintiff can prove his FMLA retaliation claim using either direct or indirect evidence. *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 707 (6th Cir. 2008). "The direct evidence and circumstantial evidence paths are mutually exclusive; a plaintiff need only prove one or the other, not both." *Kline v. Tennessee Valley Auth.*, 128 F.3d 337, 348–49 (6th Cir. 1997). Direct evidence, "if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Laderach v. U-Haul of Nw. Ohio*, 207 F.3d 825, 829 (6th Cir. 2000) (internal quotation marks omitted). We have explained:

> [Direct evidence] does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group. The evidence must establish not only that the plaintiff's employer was predisposed to discriminate on the basis of [FMLA leave], but also that the employer acted on that predisposition.

*DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004) (internal quotation marks and citations omitted). If an employee successfully presents direct evidence that the employer acted with discriminatory motive, "the burden shifts to the employer to prove by a preponderance of the evidence that it would have made the same decision absent the impermissible motive." *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 382 (6th Cir. 2002).

Demyanovich asserts that Ensign made comments to him in connection with his FMLA request that directly demonstrate Ensign's prejudice against Demyanovich relating to his health issues. Specifically, Ensign referred to Demyanovich as a "liability" immediately after Demyanovich requested FMLA leave. R. 38-5 (Demyanovich Dep. at 155, 173) (Page ID #781, 799). Ensign was Demyanovich's direct supervisor, and he made the ultimate decision, on that same evening, to terminate Demyanovich's employment. *See DiCarlo*, 358 F.3d at 415–17 (reversing summary judgment on an employee's discrimination claim because the employee's immediate supervisor referred to him as a "dirty wop" and terminated his employment only three weeks later); *see also Daugherty*, 544 F.3d at 708; *Wexler v. White's Fine Furniture, Inc.*,

317 F.3d 564, 572 (6th Cir. 2003) (en banc).  Cadon has not presented evidence sufficient to meet its burden that it would have fired Demyanovich even had he not inquired into FMLA leave because, as discussed above, neither of its purported justifications actually motivated its decision.  Thus, Demyanovich has presented sufficient evidence from which a jury could conclude that he was terminated in retaliation for requesting FMLA leave.

Although we believe that Demyanovich has successfully provided direct evidence of retaliation, there is also sufficient evidence to support his claim under the *McDonnell Douglas* burden-shifting framework.  An employee can establish a prima facie case of retaliation by showing that (1) he engaged in protected activity, (2) his employer was aware of the protected activity, (3) he was subject to an adverse employment action, and (4) there was a causal nexus between the protected activity and the adverse employment action.  *Donald*, 667 F.3d at 761. "[T]he employer's motive is an integral part of the analysis" in a claim of retaliation.  *Edgar*, 443 F.3d at 508 (emphasis omitted).  By asking Ensign for FMLA leave, Demyanovich both engaged in protected activity and made his employer aware of it.   His employment was terminated mere minutes after he informed Ensign of intent to take leave.  We have held that such "proximity in time between the protected activity and the adverse employment action may constitute evidence of a causal connection." *Bryson*, 498 F.3d at 571; *see also Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008).  Thus, Demyanovich can prove a prima facie case of retaliation.

Cadon responds with the same two purported legitimate reasons for terminating Demyanovich as raised in the FMLA interference claim.  As discussed above, Demyanovich has presented evidence from which a reasonable jury could conclude that those reasons were pretextual.  Therefore, Demyanovich can genuinely dispute whether Cadon retaliated against him for attempting to exercise his FMLA rights under either a direct or indirect evidence proof structure.  We reverse the district court's grant of summary judgment in favor of Cadon as to Demyanovich's FMLA retaliation claim.

### IV.  ADA and PWDCRA CLAIMS

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring,

advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Claims under the PWDCRA "essentially track those under [the ADA]." *Monette v. Electric Data Sys. Corp.*, 90 F.3d 1173, 1178 n.3 (6th Cir. 1996), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312 (6th Cir. 2012) (en banc). As with FMLA claims, plaintiffs may prove disability discrimination using the *McDonnell Douglas* burden-shifting framework. *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1105 (6th Cir. 2008).

To prove a prima facie case of disability discrimination, a plaintiff must show that (1) he is disabled, (2) he is otherwise qualified to perform the essential functions of a position, with or without accommodation, and (3) he suffered an adverse employment action because of his disability. *Id.* The plaintiff's disability must be a "but for" cause of the adverse employment action. *Lewis*, 681 F.3d at 321. Demyanovich is disabled because his heart condition and diabetes substantially limit several major life activities, including standing, walking, and bending. *See* 42 U.S.C. § 12102(2). In addition, his disability was a "but for" cause of his termination: He would not have been terminated had he not asked about taking leave to treat his medical conditions. The remaining disputed point is whether Demyanovich was "otherwise qualified" to work as a machine operator at the time his employment was terminated.

Demyanovich has presented evidence from which a reasonable jury could conclude that he was a qualified individual able to perform his job duties as of February 23. A "qualified individual" is one who "can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The essential functions of a job can be discerned by consulting written job descriptions, as well as the employer's judgment as to which duties are essential. *Id.* Cadon's written description of the "line operator" job identifies several essential duties, including loading and unloading equipment, performing quality inspections, and visually inspecting the product as it moves through the plating lines. R. 34-5 (Job Description) (Page ID #390). The written description does not specifically identify a lifting requirement or any other physical fitness requirement. Furthermore, although Ensign described the line operator job during his deposition as requiring several physically exerting activities that Demyanovich was no longer capable of at the time he was deposed, R. 38-6 (Ensign Dep. at 21) (Page ID

#900–03), there is no evidence that Demyanovich was incapable of performing these physical tasks *at the time he was terminated*. Indeed, Ensign admitted that Demyanovich was not fired because of performance issues, and that he had been performing satisfactorily at his job. *Id.* at 54 (Page ID #932–33). Demyanovich has provided sufficient evidence genuinely to dispute whether, at the time he was fired, he was qualified to perform the essential functions of at least some of the machine operator positions at Cadon.[5]

Because Demyanovich can prove a prima facie case of disability discrimination, the burden falls to Cadon to articulate a legitimate, nondiscriminatory reason for terminating him. Cadon asserts that it fired Demyanovich because he was subject to termination under the attendance policy and because he was permanently unable to work, the same reasons raised in response to Demyanovich's FMLA claims. For the reasons discussed above, Demyanovich can genuinely dispute whether those justifications are pretextual. Therefore, we find sufficient evidence in the record from which a reasonable jury could conclude that Cadon discriminated against Demyanovich on the basis of his disability in violation of the ADA and the PWDCRA. Accordingly, we reverse the district court's grant of summary judgment in favor of Cadon as to the disability discrimination claims.[6]

## V. CONCLUSION

For the foregoing reasons, we **REVERSE** the district court's grant of summary judgment on Demyanovich's FMLA interference, FMLA retaliation, ADA discrimination, and PWDCRA discrimination claims and **REMAND** for further proceedings consistent with this opinion.

---

[5]Had Demyanovich been unable to show that he was qualified for the machine operator position without accommodation at the time he was terminated, his PWDCRA claim would fail. Although he may also show that he would have been qualified for the job with reasonable accommodation under the ADA or the PWDCRA, the PWDCRA imposes the additional obligation that an employee request an accommodation in writing within 182 days of the date that he knew or should have known an accommodation was required. Mich. Comp. Laws § 37.1210(18). Because Demyanovich never presented a formal request for accommodation, his PWDCRA claim would have failed if he had not presented evidence from which a reasonable jury could conclude that he was able to work without accommodation.

[6]By failing to present any facts or argument relating to his ADA retaliation claim in his opening brief, Demyanovich has waived the claim on appeal. *Spirko v. Mitchell*, 368 F.3d 603, 612 (6th Cir. 2004).