**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 14a0946n.06

**Case No. 14-3197**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Dec 30, 2014
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| DEREK PEARSON, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| CUYAHOGA COUNTY, | ) | DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellee. | ) | |

**BEFORE: MERRITT, WHITE, and DONALD, Circuit Judges.**

**HELENE N. WHITE, Circuit Judge.** Derek Pearson brought this action in state court alleging that his former employer, Cuyahoga County, interfered with his rights under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2615(a)(1), and discriminated against him on the basis of a disability, violating Ohio Rev. Code §§ 4112.02(A), 4112.99. The County removed the case and the parties filed cross-motions for summary judgment. The County argued that it properly terminated Pearson's employment under its neutral Attendance Control Plan. The district court granted the County summary judgment and Pearson appeals. We AFFIRM the dismissal of the discrimination claim and REVERSE and REMAND as to the FMLA claim.

**I.**

The facts viewed in the light most favorable to Pearson[1] are that Cuyahoga County employed Pearson as a custodial worker[2] from June 26, 2006, until June 8, 2012. PID 495, 567. Beginning in 2008, Pearson missed work due to several serious medical conditions. Pearson provided the County return-to-work medical releases from doctors including his internist and primary-care physician (PCP), Dr. Tuffuor, in February 2008 for "acute gout, foot pain and hypertension," in March 2008 for "gouty arthritis," in June 2008 for "hypertension out of control," in October 2008 for "osteoarthritis of the hip," and in January 2009 for "low back strain." PID 470-72, 496. In the meantime, in July 2008 the County issued Pearson a written reprimand under Stage 1 of its Attendance Control Plan for accumulating ten or more hours of "away without leave" (AWOL) in a two-year period.[3]

---

[1] This court reviews the district court's determination on cross motions for summary judgment de novo, evaluating each motion on its own merits. *La Quinta Corp. v. Heartland Props. LLC*, 603 F.3d 327, 335 (6th Cir. 2010). Since Pearson appeals from the grant of Defendant's motion for summary judgment, we view the facts and inferences therefrom in a light most favorable to Pearson. *See* 27A Charles Alan Wright et al., Federal Procedure, Lawyers Edition § 62:679 (updated Sep. 2014); 10A Charles Alan Wright et al., Federal Practice & Procedure § 2720 (updated Sep. 2014).

[2] Pearson's regular work hours were 3 p.m. to 11 p.m. PID 539.

[3] The County's Attendance Control Plan provides in pertinent part:

> *Stage 1*
> If the employee accumulates ten (10) or more hours of AWOL in a two-year period, the employee shall receive an **AWOL Written Reprimand . . . .**
> *Stage 2*
> If the employee accumulates ten (10) or more hours of AWOL in the two-year period after the date of the issuance of their Stage 1 AWOL Written Reprimand, the employee shall be subject to a **three-day suspension**.
> *Stage 3*
> If the employee accumulates sixteen (16) or more hours of AWOL in the two-year period after the third day of their Stage 2 three-day suspension, the employee shall be subject to **removal**.

The County approved intermittent FMLA leave for Pearson effective January 20, 2009, based on Dr. Tuffuor's certification that Pearson suffered from "severe degenerative joint disease of the hip." PID 372. Dr. Peter Brooks, an orthopaedic surgeon, certified that Pearson would undergo a right hip resurfacing on April 22, 2009, and that the probable duration of his incapacity from the surgery would be "12 weeks (dependent on post-op rehabilitation)." PID 474.

The County once again approved intermittent FMLA leave for Pearson effective from June 3, 2010 to June 3, 2011, PID 479. Dr. Brooks certified on June 21, 2010, that Pearson had "advanced osteoarthritis of the right hip" that would cause episodic flare-ups necessitating that he be absent from work. PID 483.

By June 2010, Pearson had accrued more than ten hours of AWOL in the two years after receiving a Stage 1 AWOL written reprimand, so the County suspended him for violating Stage 2 of its Attendance Control Plan.[4]

**County Approves Intermittent Leave in December 2011**

In December 2011 the County again approved intermittent FMLA leave for one year based on Dr. Tuffuor's certification that Pearson suffered from multiple conditions: chronic kidney disease, hypertension, hyperlipidemia (an excess of lipids in the blood), and chronic bilateral hip and lower back pains. PID 531, 533. Dr. Tuffuor's certification[5] estimated that Pearson would have flare-ups once per month with a duration of 3-4 days per episode, but added

---

PID 467 (emphasis in original).

[4] Pearson argued in his motion for partial summary judgment, and argues on appeal, that the 2008 and 2010 disciplinary actions violated the FMLA. The district court did not address those arguments, presumably, as the County argued, because Pearson's complaint challenged only the termination of his employment based on absences from February 21 to 24, 2012.

[5] At the County's request, Dr. Tuffuor provided additional details several times over the course of several months. PID 515-32.

that "[t]here is no set treatment schedule . . . due to unpredictable flare ups. Days are working assumption." PID 531.

**January and February 2012 Absences and Correspondence from County Human Resources**

Pearson was unable to work from January 30 through February 9, 2012 (nine working days). He followed the County's procedure for taking intermittent leave by calling in and stating that he needed FMLA time off.

Two Human Resources Analysts were assigned to Pearson's FMLA matters: Leigh Harris, who was responsible for sending information to the employee and medical providers and ensuring that it was returned to the County, and Jason Sobczyk, who was responsible for reviewing the information. PID 374 n.12, 402, 441. By letter dated February 9, 2012, Harris wrote Pearson:

> Per our conversation over the past week, I am sending this letter as a reminder that a doctor's note will be required upon your return to work due to your absence being more than 3 days pursuant to the Policy and Procedures manual.
>
> The information that was provided by your doctor stated that you may be absent from work because of flare-ups that may last 3 to 4 days. Because your absence has exceeded the designation of time noted, we ask that you recertify to substantiate the need for additional time off due to your medical condition.

PID 535. Harris later conceded that the letter said nothing regarding when the recertification was due. PID 412.

On the same date, February 9, 2012, Harris sent Pearson an FMLA certification form and an "FMLA Notice of Eligibility and Rights and Responsibilities" stating that he was eligible for leave beginning on February 6, 2012. PID 536-42. Harris completed the initial portions of the Notice of Eligibility form, but did not check any of the boxes in Part B:

PART B – RIGHTS AND RESPONSIBILITIES FOR TAKING FMLA LEAVE

As explained in Part A, you meet the eligibility requirements for taking FMLA leave and still have leave available in the applicable 12-month period. **However, in order for us to determine whether your absence qualifies as FMLA leave, you must return the following information to us by 2/24/2012.** (If a certification is requested, employers must allow at least 15 calendar days from receipt of this notice.) **If sufficient information is not provided in a timely manner, your leave may be denied.**

Sufficient certification to support your request for FMLA leave. A certification form that sets forth information necessary to support your request is/ is not enclosed.

Sufficient documentation to establish the required relationship between you and your family member.

Other information needed:_____.

No additional information requested.

PID 537, 538 (emphasis in original).

As discussed below, Dr. Tuffuor, Pearson's PCP, did not submit a recertification to the County until April 24, 2012, several months past the February 24, 2012 deadline stated in the Notice of Eligibility that Harris sent Pearson on February 9, quoted *supra*. Nonetheless, the County approved FMLA leave for Pearson's absences from January 30 through February 9. PID 122, 493.

**February 21 through 24, 2012 Four-day Absence that Led to Pearson's Termination**

In late February 2012, Pearson called in sick four days in a row, on February 21, 22, 23 and 24. There is no dispute that Pearson followed the County's procedure for taking intermittent leave by calling in each day as required, and the County does not argue that Pearson was abusing his FMLA leave time. However, the parties do dispute what Pearson said and why Pearson missed these four days. Harris maintains that Pearson told her that he was off work solely due to chest pain (not FMLA-approved). Pearson testified that hip pain (FMLA-approved) prevented

him from working, that he told Harris that, and that it was not until February 24 that he experienced chest pain, called a cardiologist for an appointment (the first available appointment was Monday, February 27), and requested from Harris an FMLA certification form for the cardiologist. PID 435-36.

On February 24, three days before Harris sent Pearson the requested certification form (on February 27), she instructed payroll to designate Pearson's absences as AWOL**.** *See* Harris email to payroll stating, "Per our conversation this is to follow up that Mr. Pearson's absence for this week were not part of his current FMLA and will have AWOL from 2/22/2012 until his return to work." PID 572, 371, 406. Although the email states "February 22 until return to work," Pearson was designated AWOL for all four days, February 21 through February 24. PID 407.

Because Harris designated Pearson as AWOL in February 2012, a pre-disciplinary conference (PDC) was scheduled pursuant to the County's Attendance Control Plan for April 26, 2012, to address Pearson's alleged misconduct: accruing 16 additional AWOL hours in the two years following a three-day suspension in June 2010 for violating Stage 2 of the Plan. *See supra* n.3; PID 493, 561, 567.

**Pearson Returns to Work on February 27, 2012 with Cardiologist's Note and Harris Sends Him Another FMLA Notice of Eligibility**

When Pearson returned to work on February 27, 2012, he brought a note, as Harris had instructed in her February 9 letter, from Cleveland Clinic cardiologist Dr. Bhargava:

> Mr. Pearson was evaluated in the Cardiology outpatient on February 27, 2012.
> He should be able to return to work on February 27, 2012 with no restrictions.

PID 543. On that same day, Harris sent Pearson another "FMLA Notice of Eligibility and Rights and Responsibilities," which stated in Part A that he was eligible for leave beginning on February 21, 2012, subject to requirements stated in Part B. Part B listed four types of information but, again, Harris checked none of the boxes. *See supra* at 5.

**Dr. Bhargava's Certification Dated February 29, 2012**

Pearson testified that he faxed the FMLA certification form to Dr. Bhargava's office. PID 333. The County maintains it did not receive Dr. Bhargava's certification until the PDC on April 26, 2012; the certification is dated February 29, 2012. However, Leigh Harris testified that she could not recall whether she advised Pearson before the April 26, 2012 PDC took place that she had not received Dr. Bhargava's certification form. PID 275.

Dr. Bhargava's physician assistant, Eustathea Kavouras, stated in the certification form that Dr. Bhargava evaluated Pearson for chest pain on February 27, 2012, performed a physical exam and EKG, and prescribed medication. Unlike the note Dr. Bhargava sent with Pearson when he returned to work on February 27, 2012, which specified "no restrictions on his activities," the certification listed job functions Pearson was unable to perform: "excessive walking, bending, & lifting until he completes testing on March 19, 2012." Under "Amount of Leave Needed," Kavouras estimated "2/27/12 – 3/19/12." And Kavouras stated it was "unknown at this time" whether "the condition [would] cause episodic flare-ups periodically preventing the employee from performing his . . . job functions." PID 551-54.

Contrary to the leave dates identified in the certification form, Pearson took no FMLA leave time from February 27 to March 18, 2012. PID 564-66. He did call off work on March 19, 20, and 21, 2012, and the County approved those absences under his existing certified intermittent FMLA leave. PID 493.

**Dr. Tuffuor's Certification Dated April 24, 2012**

On April 24, 2012, two days before Pearson's PDC, Dr. Tuffuor faxed the County a recertification in response to Harris's letter of February 9. The recertification listed the following medical conditions: chronic kidney disease, hypertension, hyperlipidemia, and chronic bilateral hip and lower back pains. Dr. Tuffuor's recertification estimated flareups of seven days' duration and stated, "There is no set treatment schedule . . . due to unpredictable flareups. Days are working assumption." PID 557-60. The recertification also stated that Dr. Tuffuor treated Pearson in 2012 on February 10, March 6, and March 21. PID 558.

**Pre-Disciplinary Conference of April 26, 2012**

Harris conducted the PDC on April 26, 2012. Pearson explained at the PDC that he called off work from February 21 through 24 due to hip pain and that it was not until February 24 that he experienced chest pain, in addition to hip pain, and called Harris. Contemporaneous notes Harris took during Pearson's testimony at the PDC state that Pearson called off due to hip pain and that his primary care physician had all his medical information. Regarding the chest pain Pearson experienced, Harris's notes state that he could not be seen by a doctor until February 27, 2012. PID 401, 555.

> A report of the PDC dated May 21, 2012, states in pertinent part:
>
> Upon returning to work on February 27, 2012, Mr. Pearson did not produce any documentation substantiating that he was under doctor's care for his most recent absences nor were the FMLA forms returned to the Department of Human Resources. Instead, on February 27, 2012 Mr. Pearson submitted a note from his physician indicating that he was cleared to return to work.
> . . . .
> Both FMLA Certifications [were submitted to the County late and] were completed and signed by medical practitioners after the dates of Mr. Pearson's alleged AWOL time. Neither FMLA Certification documents FMLA treatment or period of incapacity which covers the alleged AWOL time in question. To date, Mr. Pearson has not presented any medical documentation which supports his attempt to utilize FMLA to cover the alleged AWOL time.

PID 564-66.

Harris did not follow up regarding Dr. Tuffuor's recertification after the PDC. As to Dr. Bhargava, Harris testified that she returned the certification form to him and requested additional information, either via fax or through Pearson, but she could point to no documentation evidencing that she did. PID 274-75. Nor could she recall whether the County responded to or approved Dr. Tuffuor's April 24, 2012 certification. PID 276.

## County Terminates Pearson's Employment

By letter dated May 30, 2012 and delivered to Pearson on June 8, 2012, the County terminated Pearson's employment effective June 8, 2012. PID 567-68. Also on June 8, 2012, Dr. Tuffuor's Office Manager faxed Harris that the doctor had been out of the office for three weeks, and the office "is currently working toward completing, and expediting [Pearson's FMLA documents] as soon as possible." PID 569-70. There is no indication that the County responded to this fax.

When his employment was terminated, Pearson had 376 hours of FMLA intermittent leave remaining. PID 335, 409. Although Harris testified that Pearson had enough sick time to cover February 21, 2012, the County's records clearly show that Pearson's absences were designated AWOL all four days. PID 399.

## II. FMLA INTERFERENCE CLAIM

Pearson argues that the County interfered with his FMLA rights by denying him intermittent time off for certified conditions. The County responds that it properly terminated Pearson's employment under its neutral Attendance Control Plan because "Pearson failed to timely provide the recertification for his intermittent leave and never provided medical certification that supported his absence from February 21 through 24 being due to incapacity

from a serious health condition." Appellee Br. at 23. Thus, the County contends, it could not have "interfered with" Pearson's FMLA rights because he had no right to FMLA leave on those days.

This court reviews the district court's determination on cross motions for summary judgment de novo, evaluating each motion on its own merits. *La Quinta Corp. v. Heartland Props. LLC*, 603 F.3d 327, 335 (6th Cir. 2010). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## A.

"The FMLA entitles eligible employees to take up to twelve weeks of leave during any twelve month period '[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *Demyanovich v. Cadon Plating & Coatings, LLC*, 747 F.3d 419, 427 (6th Cir. 2014) (quoting 29 U.S.C. § 2612(a)(1)(D)). "An employer may require that a request for leave . . . be supported by a certification issued by the health care provider of the eligible employee . . . The employee shall provide, in a timely manner, a copy of such certification to the employer." 29 U.S.C. § 2613. "At the time the employer requests certification, the employer must also advise an employee of the anticipated consequences of an employee's failure to provide adequate certification." 29 C.F.R. § 825.305(d).

Employers may not interfere with, restrain, or deny "the exercise of or the attempt to exercise" FMLA rights. 29 U.S.C. § 2615. In order to establish a prima facie interference claim, Pearson must show that 1) he was an eligible employee as defined under the FMLA; 2) Cuyahoga County was a covered employer as defined under the FMLA; 3) he was entitled to

FMLA leave; 4) he gave the County notice of his intention to take FMLA leave; and 5) the County denied or interfered with FMLA benefits to which he was entitled. *Wallace v. FedEx Corp.*, 764 F.3d 571, 585 (6th Cir. 2014). Only the third and fifth elements are at issue. PID 606.

If an employee establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions; if it does, the employee has the burden of rebutting the employer's proffered reasons by showing them to be pretextual. *Demyanovich*, 747 F.3d at 427.

## B.

The district court concluded that Pearson did not establish a prima facie case because he could not show entitlement to FMLA leave under element three of the test. Specifically, the court determined that Pearson did not timely submit a medical recertification to the County covering his February 21 through 24, 2012 absences. However, that determination rests on several findings about which there was conflicting evidence. First, although Harris's February 9, 2012 letter could be interpreted as alerting Pearson that his prior leave (approved in December 2011) was no longer valid by directing him "to recertify to substantiate the need for additional time off," PID 695, the County nonetheless approved absences that were presumably covered by the February 9 request (January 30 - February 9). The County also approved absences in March 2012 under Pearson's December 2011 certification. Both approvals call into question whether the County actually considered the certification invalid after February 24 (the due date for recertification). In addition, Harris's letter of February 9 "required" a doctor's note on Pearson's return but merely "requested" a recertification. PID 535. While Harris's letter of February 9 requests both a doctor's note and recertification, it fails to specify any particular documentation

(beyond a note) that Pearson might need to provide. Thus, there remains a question of fact regarding whether the doctor's note satisfied the recertification request.

We also disagree with the district court's finding that there was no question regarding the County's reason for disapproving the February 21 through 24 absences. The County maintains it was because of Pearson's failure to recertify, but there is conflicting evidence on this point: It appears Harris chose not to approve those dates based on her determination that Pearson was absent for a non-FMLA covered condition, i.e., chest pain.[6] PID 446-47. And there was at least a question of fact whether Pearson reported that he was absent due to the hip condition (already certified).

Determining the reliability of witness testimony is a quintessential function for a factfinder, and not appropriate on summary judgment. Further, the district court's determination that Pearson's FMLA interference claim fails because Dr. Tuffuor's recertification was "untimely" (not received by the County by February 24, 2012) was premature. FMLA compliance officer Lori Acosta testified that the County "has had employees bring in their completed [FMLA] med certs at a predisciplinary conference," and that "[t]ypically, Cuyahoga County will not deny a request for [FMLA] if it's not received by the 16th day. We do allow for extenuating circumstances to afford more time to provide the medical certification, particularly, if an employee indicates need for additional time, within reason." PID 97, Acosta dep. Pearson

---

[6] In addition, a reasonable jury could conclude that the County did not advise Pearson of the consequences of failing to provide the recertification within a certain time period. *See* 29 C.F.R. § 825.305(d) ("At the time the employer requests certification, the employer must also advise an employee of the anticipated consequences of an employee's failure to provide adequate certification.") The Notice of Eligibility forms Harris provided Pearson on February 9 and February 27, 2012, both stated "you must return **the following information** to us by [2/24/2012 and 3/13/2012, respectively]" but no such information was identified (none of the boxes were checked). PID 538.

testified that he believed his absences from February 21 through 24 were covered under the intermittent leave the County approved in December 2011, PID 334, 337, and that he was unaware that Dr. Tuffuor's recertification was late at all, much less several months late. PID 325, Pearson dep. Pearson's account matches portions of the record that indicate that Dr. Tuffour's office faxed certification forms directly to Harris and vice-versa, rather than to Pearson, *see e.g.,* PID 499, 560, and that Harris did not inform Pearson that Dr. Tuffuor's certification was late.

If Pearson's absences from February 21 through 24 were due to hip pain as he testified, PID 327-31, (or back pain or hypertension), no doctor's note or certification was required, and the absences should have been covered under the intermittent FMLA leave the County approved in December 2011.

Because material issues of fact remain regarding whether Pearson was entitled to FMLA leave and whether the County interfered with his FMLA rights, the County was not entitled to summary judgment on Pearson's FMLA claim.

### III.  DISABILITY DISCRIMINATION UNDER OHIO LAW

Pearson also challenges the grant of summary judgment on his Ohio disability-discrimination claim.

The Ohio Civil Rights Act prohibits discrimination in employment on the basis of disability. *Slane v. MetaMateria Partners, L.L.C.*, 892 N.E.2d 498, 502 (Ohio Ct. App. 2008) (citing Ohio Revised Code § 4112.02(A)).  In cases of disability discrimination, Ohio courts are guided by federal decisions interpreting the Americans with Disabilities Act (ADA).  *See e.g., Spencer v. Nat'l City Bank*, 732 F. Supp. 2d 778, 787 (S.D. Ohio 2010) (observing that "ADA and Ohio disability discrimination actions require the same analysis.").

To establish a prima facie case of disability discrimination under the ADA and Ohio law for failure to accommodate, Pearson had to show that 1) he is disabled, 2) he is otherwise qualified for the position, with or without a reasonable accommodation, 3) the County knew or had reason to know about his disability, 4) he requested an accommodation, and 5) the County failed to provide the necessary accommodation. *See, e.g., Myers v. Cuyahoga Cnty., Ohio*, 182 F. App'x 510, 515 (6th Cir. 2006).

The district court determined that Pearson presented no evidence that he requested an accommodation either when he called off work on February 21 through 24, 2012, or after he became aware that the County was contesting the validity of his FMLA leave for those absences. PID 698. On appeal, Pearson does not address the district court's determination or explain how it constituted error. Finding nothing in the record to undermine the district court's determination, we affirm its grant of summary judgment on Pearson's state disability-discrimination claim.

**IV.**

For these reasons we AFFIRM the grant of summary judgment on Pearson's state disability-discrimination claim and REVERSE and REMAND the FMLA claim for further proceedings consistent with this opinion.