**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 15a0504n.06

**No. 12-3520**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| ABDURAHMAN HAJI, | ) | **FILED**<br>Jul 16, 2015<br>DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| COLUMBUS CITY SCHOOLS and COLUMBUS | ) | COURT FOR THE SOUTHERN |
| CITY SCHOOLS BOARD OF EDUCATION, | ) | DISTRICT OF OHIO |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

Before: BOGGS and KETHLEDGE, Circuit Judges; and HELMICK, District Judge.[*]

BOGGS, Circuit Judge. Plaintiff-Appellant Abdurahman Haji was terminated from his job as an instructional assistant at Mifflin Middle School in Columbus, Ohio. He filed a wrongful-termination action against Defendants-Appellees Columbus City Schools and Columbus City Schools Board of Education (Board of Education). The district court granted summary judgment to the Defendants, and Haji timely appeals with respect to his claims of First Amendment retaliation and religious discrimination. For the following reasons, we affirm.

**I**

We construe the facts in the light most favorable to Haji, the non-moving party. Haji was an imam at the Masjid al Qu'ran Islamic Mosque (Mosque). Since at least November 2005, he led Friday afternoon prayer services that started at 1:00 PM and ran until approximately 1:45 or 1:50 PM. Haji also represented the interests of the Somali community at several meetings with

---

[*] The Honorable Jeffrey J. Helmick, United States District Judge for the Northern District of Ohio, sitting by designation.

Board of Education officials. At a 2005 meeting between Somali community members and the Board of Education, Haji met Principal Colon Lewis of the Mifflin Alternative Middle School (Mifflin), which had a large Somali student population. Lewis recognized Haji as "one of the elders in the Somali community" and told him about a job opening for an instructional assistant at Mifflin. Haji applied and was hired by Lewis in November 2005 to work as an instructional assistant in Melissa Ellingwood's class in English as a Second Language (ESL). The class contained 15–18 students, most of whom were native Somali speakers. Mr. Haji spoke Somali and English and helped Ellingwood, who spoke only English, to communicate with Somali-speaking students. His responsibilities also included being a "liaison between the parents, the children, and the school."

Haji's normal working hours were 7:30 AM to 2:30 PM. Lewis agreed that Haji could leave early on Friday afternoons to lead prayer at the Mosque at the time Haji was hired.[1] From the beginning of his employment in November 2005 to April 2008, Haji left early each Friday to lead prayers without signing out, as normally required. Appellant's Br. at 6. Haji typically returned to school after prayers, but if his prayer service ran long, he would not return.

In late 2007, Haji gave a lecture at the Mosque that was recorded and uploaded to YouTube. The video depicted Haji identifying himself as a Mifflin employee and voicing his concern that the school was exposing Muslim students to the polytheistic belief system of Greek mythology. In February or March 2008, Lewis and other school officials became aware of the video because a student told them that Haji "was saying bad things about the school." In

---

[1] Lewis denied that he ever granted Haji permission to leave early on Fridays and claimed to have been unaware of Haji's absences until "February or March 2008." On appeal, the Defendants claim that Lewis did not learn that Haji was leaving the classroom on Fridays until April 2008. Appellee's Br at 9-10. The Defendants finally admitted at oral argument that Lewis gave Haji permission to leave early on Fridays. Oral Argument at 14.40, *Haji v. Columbus City Schools,* No. 12-3520 (6th Cir. argued Apr. 29, 2015).

response to reports that Haji portrayed Columbus City Schools in a negative light, school officials reviewed the video and spoke to Haji and, separately, his wife about it. Haji claims that a school investigator asked him whether he was a "jihadist" and advised his wife to leave him. The Defendants claim that, aside from these meetings, "[n]o further action regarding the video was taken by the Board of Education or any of its employees, and Mr. Haji was never disciplined as a result of the video." Appellees' Br. at 7.

Haji was disciplined with a one-day suspension on February 25, 2008, due to two unrelated incidents that occurred in February 2008. The order of these two incidents is unclear from the record. First, Haji observed the filming of a promotional video in the cafeteria of the Welcome Center, a separate school for students with limited English abilities that was co-located with Mifflin, and was upset because female Somali students were not wearing traditional headdresses and were being filmed while they danced. Haji conveyed his disapproval to the students' parents, who then disciplined their children. Welcome Center Director Ken Woodward found out and confronted Haji the next day. Second, Haji observed a teacher hugging a female Somali student in a manner that he deemed inappropriate for a Muslim girl. Several students told Woodward that Haji told their parents about the hugging incident, and Woodward confronted Haji about this incident as well. On February 22, 2008, the School District held a disciplinary hearing, at which Labor Relations Director DeWayne Howard presided. Howard suspended Haji for one day without pay for being "insubordinate and contributing to a hostile work environment."

Also in Spring 2008, Ellingwood complained to Lewis that Haji's early Friday departures was interfering with his job duties.[2] Lewis testified that this was the first time he became aware

---

[2] Lewis testified at trial that Ellinwood complained in "February or March 2008." The Defendants' appellate brief indicates that the complaint occurred in April 2008. Appellee's Br at 9-10.

of Haji's early departures and that he met with Haji several times to explain that Haji was required be at work during school hours and, if he left campus during lunch to pray, he must return within 30 minutes or else face disciplinary action. Haji denies that these discussions took place. On approximately April 23, 2008, Principal Lewis, Welcome Center Director Woodward, and Mira Wright, the human-resources director who is responsible for approving religious leave, held a meeting with Haji in which they told him that he could no longer leave campus to attend Friday prayers without obtaining prior permission.[3] On April 25, Haji left school without permission. Lewis observed Haji and told him that he could not leave, but Haji nonetheless left for the Mosque. On May 30, Lewis again saw Haji leave without obtaining prior permission. Lewis arranged with Wright to hold a disciplinary hearing with Haji on June 5, 2008. Howard presided over the hearing and recommended termination for neglect of duty, insubordination, and absence from work without leave. The Board of Education ratified that recommendation on August 5, 2008.

Haji filed a complaint with the EEOC, which issued a right-to-sue letter. He then brought suit against Columbus City Schools, the Board of Education, Lewis, Wright, Woodard, and Howard under 42 U.S.C. § 1983, Title VII, and Ohio state law. The district court granted summary judgment to the Defendants on all claims. Haji timely appeals only as to a First Amendment retaliation claim under § 1983 and a religious-discrimination claim under Title VII against Columbus City Schools and the Board of Education.

---

[3] Haji claims that this meeting occurred on Wednesday, April 23. Appellant's Br. at 10. The Defendants claim that it occurred on Friday, April 18. Appellees' Br. at 10. At the meeting, Wright and Lewis told Haji that he could attend Friday prayer if he obtained permission to consolidate the 30-minute and two 15-minute breaks to which he was entitled each day. Alternatively, Haji could request personal or religious leave in hourly increments.

## II

### A. Standard of Review

We review a district court's grant of summary judgment de novo. *Frazier v. Honda of Am. Mfg., Inc.*, 431 F.3d 563, 565 (6th Cir. 2005). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The critical question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986). When ruling on a summary-judgment motion, a court must draw all reasonable inferences from the evidence in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### B. First Amendment Retaliation Claim

Haji challenges the district court's determination at summary judgment that he failed to establish a prima facie First Amendment retaliation claim. A government-employee plaintiff establishes a prima facie case of First Amendment retaliation if he demonstrates that

> (1) he engaged in constitutionally protected speech or conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by his protected conduct.

*Dye v. Office of the Racing Comm'n*, 702 F.3d 286, 294 (6th Cir. 2012). Haji was a government employee, and the Defendants concede that the video was protected speech and that Haji's termination was an adverse employment action. Appellees' Br. at 19-20. We therefore focus on the causal-connection element.

Haji need not produce definitive causal-connection evidence at the prima facie stage. *Bryson v. Regis Corp.*, 498 F.3d 561, 571 (6th Cir. 2007) ("A plaintiff's burden in establishing a prima facie case is not intended to be an onerous one."). Rather, he must "produce enough evidence of a retaliatory motive such that a reasonable juror *could* conclude that [his termination] would not have occurred but for his engagement in protected activity." *Eckerman v. Tenn. Dep't of Safety,* 636 F.3d 202, 209 (6th Cir. 2010) (emphasis added).

Temporal proximity between "an employer's knowledge of protected activity and an adverse employment action" can establish prima facie causal connection by itself. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001); *see also Mickey v. Zeider Tool and Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008). We have held that, in an appropriate case, a gap of three months between the time the employer learns of the protected activity and the adverse employment action may permit a jury to draw a causal-connection inference. *Bryson*, 498 F.3d at 571; *Singfield v. Akron Metro. Hous. Auth.,* 389 F.3d 555, 563 (6th Cir. 2004). But a longer gap, by itself, would not permit the requisite inference. *See, e.g.*, *Cooper v. City of N. Olmsted*, 795 F.2d 1265, 1272 (6th Cir. 1986) ("The mere fact that Cooper was discharged four months after filing a discrimination claim is insufficient to support an interference of retaliation."); *Hartford v. Seidner*, 183 F.3d 506, 515 (6th Cir. 1999) (five-month gap was insufficient).

Haji argues that the Defendants learned about his YouTube video in March 2008 and terminated him on June 5, 2008, when Howard recommended his termination following a disciplinary hearing. Reply Br. at 4. The Defendants respond that Haji was not terminated until August 5, 2008, when the Board of Education ratified Howard's recommendation, and therefore the temporal gap between his protected conduct and termination was too long to permit a causal-connection inference. Appellees' Br. at 29.

The relevant date of the adverse employment action is not when Haji was officially terminated but when the Defendants became motivated to terminate him, which was June 5, 2008. *Dye*, 702 F.3d at 294 (requiring causal connection-evidence that "the adverse action was *motivated* at least in part by [the employee's] protected conduct") (emphasis added). Further, Howard described the process by which the Board of Education ratified Haji's termination as a bureaucratic formality and explained that, once approved by the Board, an employee's termination "goes back to the effective date when everything was signed." In Haji's case, that effective date was June 5, 2008. Finally, even if we accept the Defendants' contention that Haji was not terminated until August, the June 5 recommendation to terminate was still an adverse employment action. *See Jenkins v. Rock Hill Local Sch. Dist.,* 513 F.3d 580, 585-86 (6th Cir. 2008) (defining an adverse employment action as "an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity"). We therefore use the June 5, 2008, date to measure temporal proximity.

The three-month March-to-June period between discovery and termination falls within the temporal-proximity period that would permit a jury to infer prima facie causation. *See Bryson*, 498 F.3d at 571; *Singfield*, 389 F.3d at 563. Even if temporal proximity alone were insufficient to permit a causal-connection inference, Haji could still satisfy his prima facie burden by "coupl[ing] temporal proximity with other evidence of retaliatory conduct to establish causality." *Michey*, 516 F.3d at 525. Haji points to "the rescission of a longstanding agreement allowing him to attend Friday prayers" as "other evidence of retaliatory conduct." Appellant's Br. at 31. Though the Defendants denied the existence of this agreement during summary judgment briefing in the district court and in their appellate brief, they conceded at oral argument that Principal Lewis agreed to allow Haji to leave campus for 60 to 90 minutes to lead prayer at

the Mosque on Friday afternoons. Oral Argument at 14.40, *Haji v. Columbus City Schools,* No. 12-3520 (6th Cir. argued Apr. 29, 2015). Lewis rescinded this agreement in April 2008, approximately one month after the school learned of Haji's Youtube video. The rescission denied Haji the ability to carry out religious duties at the same mosque at which he engaged in the religiously motivated First Amendment conduct at issue in this case. The rescission therefore supports an inference of retaliatory motive.

The temporal proximity between the Defendants' discovery of the YouTube video and Haji's termination, combined with the rescission of the agreement, could lead a jury to conclude that the video and Haji's termination were causally connected. Accordingly, Haji successfully establishes a prima facie First Amendment retaliation claim.

This conclusion does not end our inquiry. Even if the employee establishes that his protected conduct was a motivating factor behind his termination, the employer is not liable if it can show that it would have made the same employment decision even if the employee had not engaged in the protected activity. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977), *abrogated on other grounds by Burlington N. & Santa Fe. Ry. Co. v. White*, 548 U.S. 53, 67 (2006); *Thaddeus-X v. Blatter*, 175 F.3d 378, 399 (6th Cir. 1999) (en banc). The record clearly shows that the Defendants terminated Haji for blatantly violating the attendance policy. The Defendants warned Haji several times to follow the policy in April 2008, but Haji continued to leave early without signing out each Friday. Principal Lewis confronted Haji and expressly ordered him to remain on campus. But Haji left anyway. Overt disregard for the employer's policy and insubordination are generally sufficient and legitimate grounds for termination. *Cf. Connick v. Myers*, 461 U.S. 138, 164 n.3 (1983) (Brennan J., dissenting).

In this case, Haji became subject to the attendance policy only because the Defendants rescinded his previously granted exemption from that policy. We must therefore consider whether that rescission was retaliatory. Circumstances surrounding the rescission permit a prima facie inference of retaliatory motive because it closely followed the Defendant's discovery of Haji's protected conduct and concerned the same mosque at which Haji engaged in that conduct. But the rescission would not be retaliatory if the Defendants present evidence of sufficient non-retaliatory reason to rescind the agreement. *See Mt. Healthy*, 429 U.S. 287.

Ellingwood, Haji's direct supervisor, complained in Spring 2008 to Principal Lewis about Haji's absences for the first time. She told Lewis that Haji's early Friday absences caused substantial disruptions to her classroom. Haji does not dispute that Ellington complained about him. It is a sufficient, non-retaliatory reason to rescind permission for an employee to engage in otherwise impermissible conduct in response to a direct supervisor's complaint that the conduct directly interfered with the employee's job duties. Ellingwood's complaint therefore demonstrates that Lewis's rescission of the agreement was not retaliation for Haji's YouTube video. The Defendants had legitimate, non-retaliatory reasons to rescind Haji's exemption from the attendance policy and so had legitimate, non-retaliatory reasons to terminate him for his failure to comply with that policy. Accordingly, the Defendants are entitled to summary judgment on Haji's First Amendment retaliation claim.

### C. Title VII Discrimination Claim

Haji also claims that he was terminated because he was a Muslim, in violation of Title VII. He challenges the district court's holding that he failed to satisfy the prima facie burden of a religious-discrimination claim, which requires evidence "giv[ing] rise to an inference of unlawful discrimination." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

A plaintiff must ordinarily meet the *McDonnell Douglas* prima facie test by demonstrating that he: "(1) is a member of a protected group, (2) was subject to an adverse employment decision, (3) was qualified for the position, and (4) was replaced by a person outside of his class." *Talley v. Bravo Pitino Restaurant*, 61 F.3d 1241, 1246 (6th Cir. 1995) *overruled on other grounds by Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167 (2009) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). "The fourth [*McDonnell Douglas*] element may also be satisfied by showing that similarly situated non-protected employees were treated more favorably." *Talley*, 61 F.3d at 1246. The Defendants concede that Haji meets the first three elements. We therefore focus on the fourth *McDonnell Douglas* factor, which requires the "indispensable comparative evidence" that is necessary to prove discriminatory intent. *Shah v. Gen. Elec. Co.*, 816 F.2d 264, 268 (6th Cir. 1987).

There are many non-Muslim employees at Mifflin, including non-Muslim ESL instructors, and so Haji cannot claim to lack comparators. But Haji does not provide any evidence that the Defendants treated non-Muslim employees more favorably. He instead argues that he was "subjected to a pattern of religious discrimination in the months that preceded his termination." Appellant's Br. at 42. If true, this may be a substitute for comparator evidence. *Shah*, 816 F.2d at 268 ("We do not mean to suggest that a Title VII plaintiff seeking to prove disparate treatment must always present evidence establishing the last prong of the *McDonnell Douglas* prima facie test." But there must be "some additional evidence tend[ing] to establish the inference of discrimination."). The "additional evidence" that Haji presents does not support an inference of discriminatory motive.

First, Haji contends that he was disciplined in February for communicating with Muslim parents about the behavior of their children that he considered to be discordant with Islam. This

argument fails because he was not being disciplined for being a Muslim but rather for failing in his duty as a liaison between parents and the school by causing conflicts. That he acted out of religious motivation does not demonstrate discrimination because he presents no evidence that the Defendants failed to discipline employees who caused similar disruptions for non-religious reasons.

Second, Haji alleges that it was religious discrimination for the Defendants to investigate his YouTube video because similar public criticism by a Catholic priest would not have triggered an investigation. Appellant's Br. at 44. But he does not offer any evidence that Catholic (or non-Muslim) critics were treated more favorably. Haji claims that the Defendants' investigators called him a "jihadist" and harassed his wife. But Haji admitted that he was not present when the investigators interviewed his wife, and so those statements are inadmissible hearsay. *See* Fed. R. Evid. 801(c); *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1999) ("Hearsay evidence may not be considered on summary judgment"). The "jihadist" remark cannot by itself satisfy Haji's burden because "[w]hile a continuing use of racial or ethnic slurs would violate Title VII, occasional or sporadic instances of such conduct does not." *Torres v. Cnty. of Oakland*, 758 F.2d 147, 152 (6th Cir. 1985).

Third, Haji contends that Howard's position as the hearing officer for his termination leads to an inference of discrimination because Howard had previously suspended him for a discriminatory reason in February. But, as stated above, Haji has not demonstrated that he was disciplined for a discriminatory reason in February.

Finally, Haji argues that temporal proximity between his suspension and termination is evidence of discriminatory motive. But temporal proximity is evidence of unlawful motive only in retaliation cases, not disparate-treatment cases. *See Lindsay v. Yates*, 578 F.3d 407, 419

(2009). Additionally, there is no temporal proximity because the Defendants knew that Haji was a Muslim when they hired him in November 2005 and did not terminate him until June 2008. Because he provides neither comparator evidence nor "additional evidence" of discrimination, Haji fails to establish a prima facie case of religious discrimination.

### III

While Haji states a prima facie claim of First Amendment retaliation, his claim ultimately fails because the Defendants demonstrate sufficient and non-retaliatory reasons for his termination. Haji also fails to satisfy the prima facie burden for his religious-discrimination claim because he presents no evidence of discriminatory intent. We therefore AFFIRM the district court's grant of summary judgment to the Defendants.