[Cite as *Hartman v. Ohio Dept. of Transp.*, 2016-Ohio-5208.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Fred Hartman, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 16AP-222 |
| v. | : | (Ct. of Cl. No. 2014-00790) |
| Ohio Department of Transportation, | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on August 2, 2016

**On brief:** *Tobias, Torchia & Simon*, and *David G. Torchia*, for appellant.

**On brief:** *Michael DeWine*, Attorney General, *Randall W. Knutti*, and *Emily Simmons Tapocsi*, for appellee. **Argued:** *Emily Simmons Tapocsi*.

APPEAL from the Ohio Court of Claims

BRUNNER, J.

{¶ 1} Plaintiff-appellant, Fred Hartman, appeals a decision by the Ohio Court of Claims rendered on February 19, 2016 which granted summary judgment to the Ohio Department of Transportation ("ODOT") on all of Hartman's claims for disability discrimination, retaliation, and violation of the Family and Medical Leave Act ("FMLA"). Because on de novo review, even when reading the record in the light most favorable to Hartman, we find no indication that ODOT's stated reason for terminating Hartman lacked a factual basis, was not the actual reason for the termination, or was insufficient to justify the termination, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} Hartman was born in November 1939, became a truck driver in 1962, and became an employee of ODOT in 1991. Hartman loved his job, loved driving trucks, loved

plowing snow, and loved mowing. However, his history with ODOT was not entirely untroubled.

{¶ 3} Hartman served suspensions of one week and two weeks in July and December 2000, respectively, for reasons not reflected in the record. He was suspended following allegations of sexual harassment for a few days (the record is in conflict about the exact number but not more than ten or less than three) in February 2008. He was also suspended for three days at the end of November and beginning of December 2011, for having accidentally brought beer to work (apparently he forgot that it was in the container he used for his lunch). However, he had not been drinking at work, and he passed a drug and alcohol test.

{¶ 4} Then, in 2012, Hartman had a series of accidents. On January 12, 2012, Hartman was backing up a dump truck and hit an overhanging sign with the truck's smoke stack, tearing it from the truck. Hartman explained that another ODOT employee was running a weed cutting machine and was supposed to sound a horn when Hartman got too close to the sign but that he failed to sound the horn. Eight days later, on January 20, 2012, Hartman bent an outrigger leg of an arrow board sign trailer. He was backing up a truck with a sign trailer attached to it and struck another stationary trailer. Then, on February 9, 2012, Hartman backed a dump truck into the wall of a salt dome (a large concrete structure in which rock salt is stored for use on icy roads). All three accidents were determined to have been preventable. For the first accident, Hartman received a written reprimand. For the next two accidents, Hartman received a combined sanction for both incidents amounting to a five-day suspension. He was also not given assignments involving driving for two or three months. During meetings about the accidents, one of his superiors at ODOT, Jim Fife, asked Hartman twice why he did not retire since he was old enough to do so.

{¶ 5} On February 21, slightly less than two weeks after the last of the trio of accidents, Hartman submitted a letter from his doctor to ODOT in which his doctor noted that Hartman had hearing loss on his right side, had difficulty localizing sounds on that side, and that Hartman felt that his recent string of accidents was related to that sensory deficiency. On April 4, 2012, approximately a month following Hartman's five-day

suspension after the accidents, ODOT had Hartman's medical condition reviewed by a doctor. The doctor concurred that Hartman had hearing loss but stated:

> I do not see where the hearing or loss of hearing comes into play during a backing maneuver. My examination reveals adequate vision, adequate motion of the neck and upper extremities and lower extremities to operate a motor vehicle. I do not find any medical reason that would interfere with his capabilities of backing a vehicle safely.

(Ex. D at 3, Oct. 16, 2015 Hartman Dep.)

{¶ 6} On June 19, 2012, a call came in to the garage from management requesting a pothole fix. Hartman was feeling unwell and asked one of his co-workers to cover the job and he went home. A co-worker did as Hartman asked and completed the job that day. The following day, on June 20, 2012, Hartman filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). In his complaint (which was refiled again on July 2, to correct a procedural problem in its drafting) Hartman alleged age discrimination and disability discrimination. Specifically, he alleged:

> I. I am a 72 year old male with a real and/or perceived disability. I have held a position with the Ohio Department of Transportation for 21 years and I am fully qualified.
>
> II. During my employment, I have been singled out and harassed on a continuous basis and treated in a discriminatory manner because of my age and/or real or perceived disability. On 2/21/12, I was suspended without pay after being given a drug test and a fitness for duty test that I passed. I was told that my suspension was due to accidents and having unopened alcohol in my locker. I informed my supervisor that these accidents were due to my disability and requested to be given different duties, but my request was denied, although there were other duties available to me. My fellow younger non-disabled co-workers have never been drug tested, given any fitness for duty tests, or suspended when they had alcohol on the premises. I have received constant inquiries about the date of my retirement. I believe that I am continuously being discriminated against because of my age and because of my real/or perceived disability. I also believe that I am being retaliated against because of my complaints about discrimination and past filings of harassment.
>
> III. I believe that I have been discriminated against because of my age in violation of the Age Discrimination in Employment Act (ADEA). I believe that I have been discriminated against

No. 16AP-222

> based on a real/or perceived disability in violation of the Americans with Disabilities Act (ADA). I believe that I am being retaliated against based on my complaints about the unlawful discrimination and filing of an internal EEO Charge with the City.

(App'x A at Ex. 3, Dec. 31, 2015 Memo. in Opp. to Mot. for Summary Jgmt.) Less than ten days after the initial June 20 filing, on June 29, 2012, Hartman received a letter from ODOT informing him that ODOT was considering disciplinary action against him. According to the letter, disciplinary action was being considered because Hartman had failed to fill the pothole as instructed, had instead gone home on sick leave, and, when questioned about it by a superior two days later, had become "rude and insolent." *Id.* at Ex. 4*.* On July 18, 2012, Hartman notified ODOT of his need to take intermittent leave under the FMLA owing to depression and anxiety. The following day, July 19, 2012, Hartman signed a "Last Chance Agreement" in which ODOT agreed not to terminate Hartman for the allegations relating to the pothole fix and Hartman agreed to a five-day suspension and that for a two-year period he could not violate any ODOT work rule or it would result in his termination. *Id.* at Ex. 5.

{¶ 7} Less than a month later, on August 13, 2012, Hartman was hit by a motorist while attempting to cross the highway on a mower. Hartman was supposed to have an accompanying vehicle to help the mower to cross the highway safely and Hartman's supervisor had promised to send one. However, when no supporting vehicle arrived, Hartman decided to cross the road with the mower without the supporting vehicle's help and in order to finish the job. Both Hartman and the motorist were cited in the accident, the motorist for driving on a suspended license and Hartman for failure to yield. Two days later, on August 15, 2012, Hartman received a notice informing him that his five-day suspension relating to the pothole incident would begin August 20, 2012.

{¶ 8} Hartman participated in a hearing regarding the mower accident on August 27, 2012. After the hearing outside the hearing room, Fife made a comment to Hartman, "[y]ou're going to enjoy retirement." (Hartman Dep. at 43.) Three days later, on August 30, 2012, Hartman submitted a letter to ODOT from his psychiatrist asserting that Hartman would be taking leave, pursuant to the FMLA, due to panic attacks and depression starting August 30, 2012 and would be medically capable of returning to work on September 20, 2012. On September 17, 2012, the psychiatrist extended the period of

medical leave until October 22, 2012. The following day, September 18, the Ohio Department of Administrative Service issued a letter informing Hartman in writing that disability leave benefits had been approved. The same letter was received by ODOT on September 21.

{¶ 9} On the evening of September 28, 2012, Hartman's counsel sent an e-mail to ODOT in which she asserted that ODOT had never responded to Hartman's requests for accommodation of his hearing disability in the form of a job that did not require driving. ODOT responded that Hartman had never asked for such an accommodation and that, even if he had, it would have been denied because one of the essential functions of Hartman's job was driving. That same day, October 2, 2012, ODOT sent a letter to Hartman informing him that his employment would be terminated, effective October 5, 2012, for violation of the last chance agreement because of the damage his rule violation had caused to ODOT equipment. In addition to the letter, Fife called and notified Hartman of the decision by telephone. On October 5, 2012, the Ohio Department of Administrative Service informed Hartman in writing that disability leave benefits were approved through October 5, 2012, but they would extend no further because of his termination from ODOT.

{¶ 10} Nearly two years after his termination, on September 30, 2014, Hartman filed a complaint against ODOT in the Court of Claims alleging disability discrimination, retaliation, and violation of the FMLA. Although Hartman had alleged age discrimination in his EEOC charge, he did not include a claim for age discrimination in his complaint in the Court of Claims. ODOT filed an answer on June 18, 2015.

{¶ 11} On December 9, 2015, ODOT filed a motion for summary judgment supported by Hartman's deposition and related exhibits. On December 31, 2015, Hartman filed a memorandum in opposition and attached his own affidavit with referenced exhibits. ODOT filed a reply with an affidavit of Fife. On February 19, 2016, the Court of Claims ruled in ODOT's favor and granted summary judgment.

{¶ 12} Hartman now appeals.

## II. ASSIGNMENT OF ERROR

{¶ 13} Hartman posits a single assignment of error for our review:

> THE TRIAL COURT ERRED BY GRANTING DEFENDANT'S
> MOTION FOR SUMMARY JUDGMENT.

No. 16AP-222

## III.  DISCUSSION

### A.  Standard of Review

{¶ 14}  Civ.R. 56(C) provides that:

> Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The Supreme Court of Ohio has explained:

> Summary judgment will be granted only when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C); *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 Ohio Op. 3d 466, 364 N.E.2d 267. The burden of showing that no genuine issue of material fact exists falls upon the party who files for summary judgment. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 294, 1996 Ohio 107, 662 N.E.2d 264.

Byrd v. Smith, 110 Ohio St.3d 24, 2006-Ohio-3455, ¶ 10; see also, e.g., Esber Beverage Co. v. Labatt United States Operating Co., L.L.C., 138 Ohio St.3d 71, 2013-Ohio-4544, ¶ 9.

{¶ 15}  The Supreme Court has also discussed in detail the relative burdens of movant and nonmovant in summary judgment:

> [A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the

> nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.

*Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). In deciding summary judgment, the trial court must give the nonmoving party "the benefit of all favorable inferences when evidence is reviewed for the existence of genuine issues of material facts." *Byrd* at ¶ 25. When reviewing a trial court's decision on summary judgment, our review is de novo and we, therefore, apply the same standards as the trial court. *Westfield Ins. Co. v. Hunter*, 128 Ohio St.3d 540, 2011-Ohio-1818, ¶ 12; *Bonacorsi v. Wheeling & Lake Erie Ry.*, 95 Ohio St.3d 314, 2002-Ohio-2220, ¶ 24.

## B. Disability Discrimination Claim

{¶ 16} R.C. 4112.02(A) prohibits discrimination based on disabilities as follows:

> It shall be an unlawful discriminatory practice:
>
> (A) For any employer, because of * * * disability * * * to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.

The Supreme Court has explained, "we have determined that federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000(e) *et seq.*, Title 42, U.S.Code, is generally applicable to cases involving alleged violations of R.C. Chapter 4112." *Little Forest Med. Ctr. v. Ohio Civ. Rights Comm.*, 61 Ohio St.3d 607, 609-10 (1991); *see also Martin v. Barnesville Exempted Village School Dist. Bd. of Edn.*, 209 F.3d 931, 934, fn.2 (6th Cir.2000) ("Both federal and Ohio disability discrimination actions require the same analysis.").

{¶ 17} When pressing an employment discrimination claim, a plaintiff has first to establish a prima facie case of discrimination. *Greer-Burger v. Temesi*, 116 Ohio St.3d 324, 2007-Ohio-6442, ¶ 14, citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). If the plaintiff does, the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action. *Id.* Once the employer does, the burden again shifts to the plaintiff to show "that the proffered reason was not the true reason" for the adverse employment action. *Id.*, quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

No. 16AP-222

{¶ 18} A prima facie case of discriminatory discharge requires a plaintiff to show (1) he is disabled, (2) he was otherwise qualified for the position, with or without reasonable accommodation, (3) he suffered an adverse action, (4) the employer knew or had reason to know of his disability, and (5) he was replaced or the job remained open. *Rosebrough v. Buckeye Valley High School*, 690 F.3d 427, 431 (6th Cir.2012), citing *Plant v. Morton Interntl. Inc.*, 212 F.3d 929, 936 (6th Cir.2000). These elements can vary based on the circumstances of the case. *See Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 433 (6th Cir.2014) (stating the elements as "(1) he is disabled, (2) he is otherwise qualified to perform the essential functions of a position, with or without accommodation, and (3) he suffered an adverse employment action because of his disability"); *see also Rosebrough* at 431, fn.2.

{¶ 19} ODOT does not appear to dispute that Hartman's loss of hearing in one ear constituted a disability, that ODOT was, prior to the termination, aware of the condition, or that Hartman suffered an adverse action when he was terminated. ODOT did argue at the trial level that Hartman was not qualified for his position. But, reading the record in the light most favorable to Hartman (as we must on review of summary judgment), it is hard to see how a truck driver with 50 years of experience could have been unqualified to drive trucks, even with hearing loss in one ear. Although Hartman presented no evidence about whether his position was subsequently filled after his termination, because there is considerable variability in the caselaw as to the elements of a prima facie case and the final element in particular, we assume in reviewing summary judgment that Hartman sufficiently presented a prima facie case, including having met requirements on this final point. *See, e.g., Demyanovich* at 433; *Rosebrough* at 431, fn.2; *Nilles v. Givaudan Flavors Corp.*, S.D.Ohio No. 1:10-cv-919, fn.21 (May 1, 2012).

{¶ 20} The burden then shifts to ODOT under the *McDonnell Douglas* burden-shifting framework to articulate some legitimate, nondiscriminatory reason for the adverse employment action. *Greer-Burger* at ¶ 14. The record, even when read in favor of Hartman, shows four preventable accidents involving Hartman at work using work equipment in 2012, the last of which occurred after Hartman was placed on a last chance agreement. This is a legitimate and nondiscriminatory reason for terminating Hartman.

No. 16AP-222

{¶ 21} Having articulated a legitimate reason for the termination, the question is then whether Hartman could show at trial " 'that the proffered reason was not the true reason' " for the adverse employment action, that is, that it was a pretext masking discriminatory motive. *Id.*, quoting *Burdine* at 256. Multiple courts, including this Court, have explained what is required to show pretext:

> A plaintiff may establish pretext by proving that: (1) the employer's stated reason for terminating the employee has no basis in fact, (2) the reason offered was not the actual reason for the termination, or (3) the reason offered was insufficient to explain the employer's action.

*Smith v. Ohio Dept. of Pub. Safety*, 10th Dist. No. 12AP-1073, 2013-Ohio-4210, ¶ 77, citing *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir.1994).

{¶ 22} The evidence in the summary judgment record falls short, even when read in a light most favorable to Hartman. The record demonstrates that Hartman's job was terminated for the express reason that he was involved in a preventable traffic accident while on a last chance agreement. Hartman admits that the accidents reflected in the record occurred and that he knew he would be terminated from his employment upon the last accident due to the last chance agreement providing any violation of work policy would result in termination. Thus, Hartman essentially admits that there was a sufficient basis in fact for the termination.

{¶ 23} However, Hartman alleges that the last accident and others occurred as a result of his disability, that his disability interfered with his driving, and that he should have been given an accommodation relieving him from driving duties. In other words, Hartman argues that the cause of his employment termination was actually his disability and ODOT's failure to accommodate. Reading the record in favor of Hartman and drawing all inferences in his favor, the evidence in the record does not favor Hartman's position that partial hearing loss in one ear resulted in Hartman's repeatedly backing into silent, visible stationary objects or in deciding to violate a rule against crossing the highway on a mower without a supporting vehicle. Hartman admitted during his deposition that for three of the accidents, he was not even attempting to listen for anything. With respect to the mower incident, Hartman testified that his hearing had nothing to do with the accident and that the oncoming car would have been visible for at least a quarter mile of the open highway before the collision. And the evidence for the one

incident where Hartman was listening for a horn and backed into the sign includes Hartman's testimony that his co-worker never sounded the horn and so the sound did not occur that he would have allegedly failed to hear. Viewing the summary judgment evidentiary record in the light most favorable to Hartman and drawing all reasonable inferences in his favor, Hartman cannot show that ODOT's reason for terminating his employment (violation of the last chance agreement and accidents) was a pretext.

{¶ 24} In arguing against this conclusion, Hartman asserts that the trial court erred in failing to address comments by Fife to the effect that Hartman should consider retirement. Even if such comments were in fact discriminatory in nature and even if the stated reasons for Hartman's termination could be found to be pretextual, Hartman did not assert a claim for age discrimination in his Court of Claims action now under review. S*ee also Sabouri v. Ohio Dept. of Job & Family Servs.*, 145 Ohio App.3d 651, 654 (2001), citing *State ex rel. Quarto Mining Co. v. Foreman*, 79 Ohio St.3d 78, 81 (1997) (holding that a cause of action failed because it was not asserted in the trial court). Hartman's age discrimination claim was an EEOC claim not before us.

{¶ 25} Concerning his disability, Hartman argues that ODOT should have but did not engage in an interactive process with him to accommodate his disability, rather than terminate his employment, and that this, in and of itself, is a violation. Specifically, Hartman argues that ODOT could have assigned him to non-driving duties.

{¶ 26} Hartman is correct that under Ohio law:

> (1) An employer must make reasonable accommodation to the disability of an employee or applicant, unless the employer can demonstrate that such an accommodation would impose an undue hardship on the conduct of the employer's business.
>
> (2) Accommodations may take the form, for example, of providing access to the job, job restructuring, acquisition or modification of equipment or devices or a combination of any of these. Job restructuring may consist, among other things, of realignment of duties, revision of job descriptions or modified and part-time work schedules.

Adm.Code 4112-5-08(E). However, as discussed above, there is absolutely no evidence from which we could conclude, even drawing all inferences in favor of Hartman, that his partial hearing loss prevented him from performing any aspect of his job, including driving, such that he might have needed such an accommodation. Only two doctors' notes

appear in the record regarding Hartman's hearing in relation to driving. One concluded that Hartman had fully adequate faculties to drive a truck (even in reverse), and the other merely indicated that Hartman believed the hearing loss caused the recent accidents without endorsing that view. Hartman admitted during his deposition that with respect to three of the accidents (two of which involved backing into silent stationary objects), he was not even attempting to listen for anything. With respect to the collision while on the mower, Hartman testified that the oncoming car would have been visible for at least a quarter mile of open highway before the collision. And regarding the one incident where Hartman was listening for the horn and backed into the sign, Hartman testified that his co-worker never sounded the horn and so the sound was never available for him to fail to hear. As a matter of law, hearing impaired persons (even those with a complete loss of hearing) are legally permitted to obtain drivers' licenses in Ohio. *See, e.g.*, R.C. 4507.141.

## C. Retaliation Claim

{¶ 27} R.C. 4112.02(I) prohibits retaliation by an employer against an employee:

> It shall be an unlawful discriminatory practice:
>
> * * *
>
> (I) For any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code.

{¶ 28} The Supreme Court has explained that to establish a prima facie case of retaliation:

> [A] claimant must prove that (1) she [or he] engaged in a protected activity, (2) the defending party was aware that the claimant had engaged in that activity, (3) the defending party took an adverse employment action against the employee, and (4) there is a causal connection between the protected activity and adverse action.

*Greer-Burger* at ¶ 13, citing *Canitia v. Yellow Freight Sys., Inc.*, 903 F.2d 1064, 1066 (6th Cir.1990). As was true in the disability discrimination context, "[i]f a complainant establishes a prima facie case, the burden then shifts to the employer to 'articulate some legitimate, nondiscriminatory reason' for its actions." *Greer-Burger* at ¶ 14, quoting

No. 16AP-222

*McDonnell Douglas* at 802.  Then, "[i]f the employer satisfies this burden, the burden shifts back to the complainant to demonstrate 'that the proffered reason was not the true reason for the employment decision.' " *Greer-Burger* at ¶ 14, quoting *Burdine* at 256.

{¶ 29} There is no dispute that Hartman engaged in protected activity when he filed an EEOC charge, that ODOT was aware of Hartman's EEOC charge, and that, in firing Hartman, ODOT took an adverse employment action against him. Hartman's prima facie case hinges on whether the record, viewed in the light most favorable to Hartman, shows a causal connection between the EEOC charge and the firing. *Greer-Burger* at ¶ 13.

{¶ 30} There is no evidence in the record that anyone at ODOT ever mentioned Hartman's EEOC charge as a reason for his termination.  Thus, any causal connection between the EEOC filing and the termination would have to be inferred from circumstantial evidence.

{¶ 31} The Supreme Court has held cases involving only a temporal proximity between an employer's knowledge of protected activity and an adverse employment action to be sufficient evidence of causality if they are temporally " 'very close' " to establish a prima facie case.  *Clark Cty. School Dist. v. Breeden*, 532 U.S. 268, 273 (2001), quoting *Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir.2001), citing *Richmond v. Oneok, Inc.*, 120 F.3d 205, 209 (10th Cir.1997); *Hughes v. Derwinski*, 967 F.2d 1168, 1174-75 (7th Cir.1992).  The Sixth Circuit Court of Appeals has elaborated that "in an appropriate case, a gap of three months between the time the employer learns of the protected activity and the adverse employment action may permit a jury to draw a causal-connection inference." *Haji v. Columbus City Schools*, 621 F. App'x 309, 313 (6th Cir.2015), citing *Bryson v. Regis Corp.*, 498 F.3d 561, 571 (6th Cir.2007); *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 563 (6th Cir.2004).  Further analysis is necessary, however, because " '*proximity alone may not survive summary judgment*, nor does it necessarily imply causation.' "[1] (Emphasis sic.)  *Blosser v. AK Steel Corp.*, 520 F.

[1] The reasoning supporting the distinction is this:

> Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation. But where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality. The reason for this distinction is simple: if an employer immediately retaliates against an

No. 16AP-222

App'x 359, 363 (6th Cir.2013), quoting *Chandler v. Specialty Tires of Am.*, 283 F.3d 818, 826 (6th Cir.2002).

{¶ 32} In this case, the EEOC charge was filed on June 20, 2012, and Hartman was terminated on October 2, 2012. It is not clear from the record when ODOT learned of the EEOC charge, but in the normal course of affairs it should have received notice as a matter of statute. *Breeden* at 273; 42 U.S.C. 2000e-5(e)(1). Based on these factors, including the statutory notice requirement, our obligation to draw reasonable inferences in favor of Hartman, and the lack of assertion by ODOT that it did not receive notice of the EEOC charge, it is reasonable to assume that ODOT received notice of the charge before the end of June 2012. Under this analysis, we view the period between the filing of the charge and the termination to be approximately two months. Under these facts and according to Sixth Circuit precedent, Hartman could make a prima facie case of retaliatory termination.

{¶ 33} We find under these facts and applicable law that ODOT has asserted a " 'legitimate, nondiscriminatory reason' " for terminating Hartman (his frequent accidents and other discipline matters). *Greer-Burger* at ¶ 14, quoting *McDonnell Douglas*, 411 U.S. at 802. Hartman must then show pretext in that "(1) the employer's stated reason for terminating the employee ha[d] no basis in fact, (2) the reason offered was not the actual reason for the termination, or (3) the reason offered was insufficient to explain the employer's action." *Smith* at ¶ 77, citing *Manzer* at 1084.

{¶ 34} The record establishes that Hartman was involved in a number of preventable accidents with the result that work equipment was damaged. Hartman does not dispute that these occurred or that, by the time he was subject to the last chance agreement, the rule violation and final accident were sufficient reason to terminate his employment. Though Hartman claims the accidents were the result of his diminished hearing in one ear and that he should have been accommodated in that regard, there is

---

employee upon learning of his protected activity, the employee would be unable to couple temporal proximity with any such other evidence of retaliation because the two actions happened consecutively, and little other than the protected activity could motivate the retaliation. Thus, employers who retaliate swiftly and immediately upon learning of protected activity would ironically have a stronger defense than those who delay in taking adverse retaliatory action.

(Emphasis omitted.) *Blosser* at 363-64, quoting *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir.2008).

No. 16AP-222

simply nothing in the record to support that view.  Hartman has presented no facts to demonstrate pretext, that is, " 'that the proffered reason was not the true reason for the employment decision.' " *Greer-Burger* at ¶ 14, quoting *Burdine* at 256.

### D.  Family Medical Leave Act Claim[2]

{¶ 35}  Subject to certain conditions, the FMLA provides eligible employees with an entitlement to 12 workweeks of leave during a 12-month period for things such a serious health condition that renders the employee unable to perform the functions of his or her position. 29 U.S.C. 2612(a)(1)(D).  It is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" in Title 29 U.S.C. 2611 *et seq.* 29 U.S.C. 2615(A)(1).

{¶ 36}  For Hartman to make a prima facie case of an FMLA violation, Hartman must show:

> (1) []he was an eligible employee; (2) the defendant was an employer as defined under the FMLA; (3) the employee was entitled to leave under the FMLA; (4) the employee gave the employer notice of h[is] intention to take leave; and (5) the employer denied the employee FMLA benefits to which []he was entitled.

*Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir.2012), quoting *Killian v. Yorozu Auto. Tennessee, Inc.*, 454 F.3d 549, 556 (6th Cir.2006), citing *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir.2005).  The first four elements are not contested in this case.  The critical question for FMLA is whether ODOT denied Hartman FMLA benefits to which he was entitled.

{¶ 37}  The Sixth Circuit has held that "[i]f an employer takes an employment action based, in whole or in part, on the fact that the employee took FMLA-protected leave, the employer has denied the employee a benefit to which he is entitled." *Wysong v. Dow Chem. Co.*, 503 F.3d 441, 447 (6th Cir.2007).  Similar to Hartman's claim for EEOC retaliation, there is no evidence whatsoever in the record that ODOT terminated Hartman's employment because Hartman sought FMLA benefits.  But there is a coincidence in timing.  Hartman gave notice that he was seeking FMLA benefits on

---

[2] Hartman's complaint is very non-specific with regard to this claim, alleging only that "[d]efendant's conduct described above [in the rest of the complaint] violated the FMLA." (Sept. 30, 2014 Compl. at ¶ 23.) While this could have taken the form of an FMLA retaliation claim, Hartman disclaimed such a theory in his memorandum in opposition to summary judgment and argued only a basic FMLA violation.

No. 16AP-222

July 18, 2012. He was terminated from employment less than two months later on October 2, 2012. Viewing the facts in a light most favorable to Hartman, he could make a prima facie case under the FMLA.

{¶ 38} However, again, FMLA claims are subject to the *McDonnell Douglas* burden-shifting framework. *Donald* at 762, citing *Grace v. USCAR*, 521 F.3d 655, 670 (6th Cir. 2008). Hartman's allegations fail because ODOT had a legitimate reason for terminating him. The record factually supports ODOT's stated reason for terminating Hartman and not any pretextual or insufficient reason. *Smith* at ¶ 77, citing *Manzer* at 1084.

## IV. CONCLUSION

{¶ 39} Although Hartman likely could establish a prima facie case for each of his claims, ODOT had legitimate, nondiscriminatory reasons for terminating Hartman. Construing the record in the light most favorable to Hartman, Hartman cannot show even a question of fact as to whether such reasons were pretextual. Accordingly, the Court of Claims did not err in granting summary judgment against Hartman and in favor of ODOT. Hartman's sole assignment of error is overruled, and the judgment of the Ohio Court of Claims is affirmed.

*Judgment affirmed.*

BROWN and KLATT, JJ., concur.